IN MUSCOGEE SUPERIOR COURT, FEBRUARY, 1833.

### COOPER *vs.* PERRY.

#### *Slander.*

WORDS laid are " *You are a member of the Pony Club.*" Demurrer. 1st. That the words are not actionable in themselves, as they do not charge a specific crime. 2d. That there being no special damage laid with a *per quod,* the action must fail. Replied by counsel, that the words do import, in the common vulgar acceptation, as distinct a charge of crime, as if the defendant had said plaintiff had stolen horses, and by implication they do, in effect, make out that crime.

*Per Curiam.* The rule now is, that words are not to be construed in their most harmless sense, but they are to be understood in their most *usual sense* ; 8 Mass. 248; 3 Serg. & Raw. 255; 1 Wash. Rep. 188; 1 Nott & M'Cord, 217. at least, as the vulgar understand and interpret them. In South Carolina, to call a white man a mulatto, is actionable. 1 Bay, 171; 1 Nott & M'Cord, 184. To constitute slander, the words must impute a precise crime, and must not impute more nor less. 3 Blk. Com. 125, note ; 2 Esp. N. P. 80. So they may be actionable, according to the application or allusion to the circumstances under which they were spoken. Yet they should import some degree of guilt; as, to say a man is in jail for stealing a horse, was held not actionable,

*Words, which are doubtful or even innocent in themselves, if they be proven to have a criminal signification according to the common understanding of them will support an action of slander.*

for the person might be innocent, and the words only import his being in suspicion. 2 Esp. N. P. 80. Where the words are used with an intention to slander, though the offence which the defendant intended to lay to the plaintiff's charge, is improperly expressed, yet may the words be actionable. If they are understood in common speech as tending to defame, the court will see if the words are of such a description as import damage to the party. Gilb. Rep. 21 ; 2 Esp. N. P. 100, 513, marginal.

An *innuendo* can never be permitted to extend their meaning beyond the import of the *words themselves*. 2 Esp. N. P. 101. So if these words in the vulgar acceptation do not import crime, or a defamation upon their face, the *innuendo* cannot help them out. Although the words used do not specify crime, yet if they as certainly charge the crime of horse-stealing, according to their common acceptation, as any words that could be used, they are then actionable of themselves. 4 Bac. Abr. 486, 487 ; Stra. 471, 545. Not only is the *sense* of the words to be regarded in construing them, but the *rule of construing these words* which at *that time* prevailed. 4 Bac. Abr. 497. If words which have a slanderous signification in a certain place, are published in that place, an action lies—although it would not for publishing the same words in another place ; and if the judge before whom the case is tried does not understand the meaning of such words, it may be learned from witnesses. For instance. In one part of the kingdom, to say of a man " *he has strained a mare*," meaning that he carnally knew a mare, is actionable, if the words be spoken in such place. 4 Bac. Abr. 497, 498. So the words " he mainsworn" were held actionable as published in a part of the kingdom where they were understood to convey a charge of perjury. Starkie on Slander, 85. Lord Mansfield says in King v. Horne, 1 Cowper, 672, it is the duty of the jury to construe plain words and clear allusions to matters of universal notoriety according to their obvious meaning, and as every body else who reads must understand them. Starkie on Slander, 52. The criminal quality of the act imputed may appear from circumstances explaining the meaning of doubtful words, or otherwise innocent words. *Ib.* 75. Therefore it is of no importance whether the terms used be doubtful, or apparently innocent, provided it can be shown that they could and did convey the offensive meaning which forms the ground of complaint. *Ib.* 76 & 84. One view of this case, however, inclines the court to support the demurrer, and not sustain the action, which is this. Admitting these words to be true in their broadest and most criminal allusion, the party could not be convicted of any crime known to the laws, for even being a member of a pony club would not and could not subject him, irrespective of other proof. Yet if the words are proven to have a criminal signification, the action should lie.

The judges in convention decided that the proper course is to let the case go to the jury, and if the words are proven to impute the crime of horse-stealing in their common acceptation, then the action ought to be sustained, if not, it must fail.